## POWESHIEK COUNTY v. BUTTLES ET AL.

1. **School Fund:** SECURITIES GIVEN ON SALE OF SCHOOL LANDS: POWER OF SUPERVISORS TO COMPROMISE. Under chapter 148, Laws of 1862, the supervisors of a county had authority, in the exercise of a sound discretion, to compromise with a purchaser of school lands, where the unpaid purchase money, with the interest accrued thereon, greatly exceeded the value of the lands, and the purchaser was insolvent, and there was nothing but the lands out of which to make the purchase money.

2. ———: PURCHASE OF SCHOOL LANDS: PAYMENT: TO WHOM MADE. Where payment for school lands should have been made to the county treasurer, but was in fact made to the clerk, but the money eventually reached the treasurer, and, upon a certificate of the auditor, the purchaser obtained a patent from the state, *held* that the county could not afterwards assail the validity of the purchaser's title on the ground that payment was not made to the treasurer.

*Appeal from Wapello District Court.*

FRIDAY, DECEMBER 10.

ACTION in chancery to set aside for fraud certain patents issued by the state for school lands, and to declare void a

compromise made by the supervisors of Poweshiek county with defendant Buttles of certain indebtedness for school lands purchased by him, whereby the county agreed to receive less than the full amount of the indebtedness; and for a a judgment against Buttles for the amount due upon his purchase of the school lands; and for other special and general relief. While the case was pending in the court below, Buttles died, and George J. Boal, executor, and Sarah Buttles, executrix, were substituted as defendants. The suit, however, is prosecuted in this court under the title above set out. Upon a trial on the merits, there was a decree for defendants, dismissing plaintiff's petition. It appeals to this court.

*Thos. A. Cheshire*, for appellant.

*S. H. Fairall* and *John T. Scott*, for appellees.

BECK, J.—I. The petition alleges the following facts: In 1857, Buttles entered into two written contracts with the school fund commissioner of Poweshiek county for the purchase of separate tracts of land, amounting in the aggregate to eight hundred acres. The purchase price of the land was $3,142.80, of which $787.20 were paid in cash, and notes given for the balance, due in ten years, with annual interest at the rate of ten per centum. Upon payment of the notes, and interest thereon, the contract provides that a patent for the land shall be issued to the purchaser. In 1862 a judgment in an action against Buttles was rendered for accrued and unpaid interest, and the lands were sold upon an execution issued thereon for a sum sufficient to pay the judgment and interest and costs, with an excess of $653.10 remaining after the satisfaction of the judgment. A part of the land was purchased upon the execution sale by one Morrison, and a part by the county, for the use of the school fund. In 1863 one Bently, on behalf and for the benefit of Buttles, proposed a compromise and settlement of Buttles' indebtedness,

and thereupon the board of supervisors passed a resolution, which was explained and interpreted by a subsequent resolution, to the effect that, upon Bentley's paying the county for the use of the school fund fifty per centum of Buttles' indebtedness, after deducting therefrom the amount of the surplus realized on the sale of the land, his notes and contract should be given up, and the county clerk should assign and transfer the bid of the county to Bently.

It is alleged in the petition that this compromise was void, for the reason that the county had no legal right to make it, and to transfer its bid.; and it is further charged that neither Buttles, nor any one for him, ever paid to the proper officers of the county the amount due upon the notes and contracts, as contemplated by the resolution of the supervisors authorizing the settlement. It is also alleged in the petition that Buttles fraudulently procured a deed to be made to himself by the sheriff for the lands sold to the county, and in the same manner procured a certificate of the clerk showing the payment of the purchase money for the lands, whereon he procured a patent issued by the governor of the state.

The defendants deny the allegations of fraud in the procurement of the sheriff's deed to Buttles, and the certificate of payment of his indebtedness under the contracts and the patents. They allege that the settlement of Buttles' indebtedness by the supervisors was made in the exercise of lawful authority, and payments were made to the county as therein provided. Other allegations of the pleadings need not be here recited.

II. Counsel for plaintiff maintain (1) that the board of supervisors had no authority to compromise the claim against Buttles, and their action in that regard is void; (2) that the assignment of the bids for the land sold to the county was without authority, and void; (3) that Buttles' indebtedness for the lands remaining, after deducting therefrom the sums realized upon the sales of the lands above the amount of the judgment and costs, was never

paid to any officer of the county authorized to receive it; (4) that the patents to the lands were obtained by fraud. Two minor propositions need not be stated, as their consideration is not necessary for the disposition of the case. A discussion of the proposition above stated will lead to the decision settling the rights of the parties.

III. *As to Plaintiff's First and Second Propositions.* Chapter 148 of the Acts of the Ninth General Assembly, in

1. SCHOOL fund: securities given on sale of school lands: power of supervisors to compromise.

force at the time, provides "that the several boards of supervisors shall hold and manage the the securities given to the school funds in their respective counties, and also all judgments and lands therein belonging to said fund, for the use of said fund; and to that end such counties shall have power to sue in their own name for the use of said fund, either by the district attorney, or such other attorney as such board shall select, and to do all other acts in relation to the same necessary to the protection of said fund.     *     *     * "

This statute confers authority upon the counties "to do all acts necessary for the protection of the fund." The acts here authorized are those which are demanded for the security and preservation of the school fund, and to prevent loss and diminution thereof. It cannot be claimed that an act which, in the exercise of reasonable prudence and foresight, would not appear to have such result, is authorized by the enactment; but, on the other hand, any acts which, in the exercise of the wisdom and care, men of affairs ordinarily bestow for the security and collection of debts, are within the authority conferred by the provision. If a prudent man, acting for himself, or in the capacity of a public officer, would, for the purpose of securing or collecting a debt, compromise with the debtor, and discharge him upon payment of half of the debt, the county supervisors were authorized, under this statute, to do the same thing. The wisdom and prudence of the act must be determined upon the facts as they appeared at the time to the supervisors. It will not do to consider mat-

ters which arise after the compromise is made,—to regard subsequent values of property, or the responsibility of. the debtor as it appeared after he had improved his condition.

The evidence before us authorizes the conclusion that, at the time the compromise and settlement were ordered by the supervisors of the plaintiff, the lands in question were not equal in value to the debt owed by Buttles. They, had been sold for a sum much less upon the jugdment recovered for the interest on the debt. Whether they would have been held subject to sale for the principal of the debt, we need not inquire. Certainly the portion bought in by the county would not. Buttles at the time, if not wholly insolvent, was in embarrassed circumstances, and was unable to pay the interest on the debt, or redeem the land. It was a time of depression in the values of lands, and of uncertainty in all financial affairs, being the most gloomy period of the Rebellion. In view of the facts, we conclude that the supervisors were warranted in the conclusion that the settlement made by them with Buttles was necessary for the protection and security of the school fund committed to their care. We conclude that, in the exercise of their lawful authority, they made the settlement, and, in performing their part, they lawfully transferred the bids for the land made by the county at the sheriff's sale.

IV. The evidence, in our opinion, satisfactorily establishes the fact that the payments were made by or for Buttles, as contemplated and provided for by the settle-

2. ——: purchase of school lands: payment: to whom made.

ment. That such payment was made to the clerk of the county, we think will not admit of a doubt. Indeed, we do not understand that plaintiff's counsel denies it, nor is it denied in the pleadings. But, as we understand, it is insisted by the defendant that the money was not paid to the treasurer, the proper officer to receive it. We will not stop to inquire whether a payment made to the clerk of the county would bind defendant, and operate as a discharge of the obligations which Buttles assumed under

the settlement.    Undoubtedly, if the money reached the treasury of the county, through a payment to the treasurer by Buttles or the county clerk, it would have that effect. This proposition, we think, cannot be denied, and does not demand discussion for its support.

A witness testifies that, prior to the execution of the sheriff's deed on the bid made to the county and the issuing of the patent, the county treasurer informed him that the money had been paid to the treasurer, and "the matter was all settled up."    This information ·was made in response to inquiries by the witnesses, who was, for Buttles, urging the closing up of the transaction.    It seems unaccountable that the county auditor should not have known the fact, if the money had not been paid into the treasury when he issued his certificate upon which the patent was issued. He hesitated in issuing the certificate, showing no disposition to act hastily for the benefit of Buttles.    He surely would not have issued the certificate had he known that all the money Buttles had undertaken to pay had not been received by the county.    So the sheriff, in executing the deed, must have been satisfied by the same fact; for, by the terms of the settlement, the payments, were to be made before the deed was executed.    The law presumes these officers performed their respective duties.    These considerations corroborate the evidence of the admission of the treasurer.    The only evidence to the contrary is the fact that the treasurer's books do not show the payments.    To our minds, the strong preponderance of the evidence supports our conclusion that the money to be paid by Buttles, according to the terms of the settlement, did finally reach the county treasury.

V.    We think the evidence fails to support the charges made in the petition that the patents were obtained by fraud. We find no false and fraudulent representations inducing their issue.    Having reached the conclusions that the supervisors were authorized to make the settlement, and that pay-

ment by or for Buttles was made to the county as required by it, we are driven to the conclusion that the auditor rightly issued the certificates, upon which the patents were lawfully issued.

VI.    Other considerations, though not guiding us to the conclusions we reach, do give us a degree of satisfaction with the result.    The transactions occurred from sixteen to twenty-five years ago.    The settlement was made in 1863, and the patent finally issued in 1870.    It was eleven years after the last date before this suit was commenced.    During all of this time the memory of those cognizant of the business was fading.    Buttles has departed this life.    Doubtless, witnesses have removed away or died.    The further we recede from the transactions the less clearly can we discover the facts which induced it.    The county, relying upon the assumed want of authority of the supervisors to make the settlement, and the absence of entries in the treasurer's books to show the payment of the money into the treasury, after this long lapse of time presses its claim against an estate, which, if allowed, will deprive it of valuable property; and this is done by discrediting the official acts of its officers, and by setting aside a patent issued by the state.    We think the evidence overcomes the claim made by the county, and, in our opinion, the result is in accord with justice.

VII.    A fact which we have omitted to state, though of no importance to the decision of the issues, we notice here, out of its proper connection.    Morrison assigned his right to a sheriff's deed under the execution sale to Buttles or Bentley, as we understand the record.    With the knowledge and assent of the supervisors, a sheriff's deed was made to the assignee.

We reach the conclusion that the decree of the district court dismissing plaintiff's petition ought to be

AFFIRMED.